1

2

3

4

5
UNITED STATES DISTRICT COURT

6
EASTERN DISTRICT OF WASHINGTON

7
SHERRIE T. MOORE,

8
                Plaintiff,

9
   v.

10
CAROLYN W. COLVIN, Acting
Commissioner of Social Security

11
Administration,

12
             Defendant.

NO: 13-CV-0247-TOR

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

13

14
    BEFORE THE COURT are the parties' cross-motions for summary

15
judgment (ECF Nos. 17 and 19). Plaintiff is represented by Sara M. Herr-

16
Waldroup. Defendant is represented by Lisa Goldoftas. This matter was

17
submitted for consideration without oral argument. The Court has reviewed the

18
administrative record and the parties' completed briefing and is fully informed.

19
For the reasons discussed below, the Court grants Defendant's motion and denies

20
Plaintiff's motion.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

1

JURISDICTION

2      The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g);

3 1383(c)(3).

4

STANDARD OF REVIEW

5      A district court's review of a final decision of the Commissioner of Social

6 Security is governed by 42 U.S.C. § 405(g).  The scope of review under §405(g) is

7 limited: the Commissioner's decision will be disturbed "only if it is not supported

8 by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

9 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

10 relevant evidence that "a reasonable mind might accept as adequate to support a

11 conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently,

12 substantial evidence equates to "more than a mere scintilla[,] but less than a

13 preponderance."  *Id.* (quotation and citation omitted).  In determining whether this

14 standard has been satisfied, a reviewing court must consider the entire record as a

15 whole rather than searching for supporting evidence in isolation.  *Id.*

16      In reviewing a denial of benefits, a district court may not substitute its

17 judgment for that of the Commissioner.  If the evidence in the record "is

18 susceptible to more than one rational interpretation, [the court] must uphold the

19 ALJ's findings if they are supported by inferences reasonably drawn from the

20 record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work").  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff filed applications for disability insurance benefits and supplemental security income disability benefits on July 14, 2009, alleging a disability onset date of January 1, 2006. Tr. 170-72; 173-75. These applications were denied initially and upon reconsideration, and Plaintiff requested a hearing. Tr. 73-75, 80-83; 89-91, 94-95; 99-100. A hearing was held before an Administrative Law Judge on November 14, 2011. Tr. 39-68. The ALJ rendered a decision denying Plaintiff benefits on February 16, 2012. Tr. 14-25.

The ALJ found that Plaintiff met the insured status requirements of Title II of the Social Security Act through March 31, 2007. Tr. 16. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2006, the alleged onset date. *Id*. At step two, the ALJ found that Plaintiff had severe impairments, *id*., but, at step three, the ALJ found that Plaintiff's severe

impairments did not meet or medically equal a listed impairment.  Tr. 17-19.  The

ALJ then determined that Plaintiff had the residual functional capacity to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and
> 416.967(b) except she can occasionally crawl, crouch, stoop, kneel,
> balance, and climb ramps and stairs; she should never climb ladders,
> ropes, or stairs; she should avoid concentrated exposure to pulmonary
> irritants; she could perform no more than lower semiskilled tasks
> (SVP3); and she should have no more than occasional superficial
> contact with the general public.

Tr. 19.  At step four, the ALJ found that Plaintiff was capable of performing past

relevant work as a housekeeping cleaner.  Tr. 23-24.  In light of the step four

finding, the ALJ concluded that Plaintiff was not disabled under the Social

Security Act and denied her claims on that basis.  Tr. 24-25.

The Appeals Council denied Plaintiff's request for review (Tr. 10) on April

9, 2013, making the ALJ's decision the Commissioner's final decision for purposes

of judicial review.  Tr. 5-9; 20 C.F.R. §§ 404.981, 416.1484, and 422.210.  On

June 5, 2013, the Appeals Council extended the time within which Plaintiff could

file a civil action by 30-days.  Tr. 1-2.

## ISSUES

Plaintiff raises three issues for review:

1. Whether the ALJ properly determined Ms. Moore has past relevant
   work as a housekeeper;

2. Whether the ALJ properly found Ms. Moore not credible; and

3.  Whether the ALJ's RFC is valid.

ECF No. 17 at 1.  In her reply brief, Plaintiff abandoned a fourth issue concerning her request for a remand based upon the new evidence she submitted to the Appeals Council, ECF No. 24 at 2.

DISCUSSION

**A. Substantial Gainful Activity as a Housekeeping Cleaner**

Plaintiff argues that because none of her earnings reached the presumptive threshold to be considered substantial gainful activity, her work as a housekeeper cleaner did not comprise substantial gainful activity. ECF No. 17 at 9-11.  She further argues that she did not sign or otherwise affirm the information on a form on which the ALJ relied.  ECF No. 24 at 3.  The Court disagrees.

At step four, the claimant bears the burden of showing that he or she does not have the residual functional capacity to engage in "past relevant work." *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001) (citations omitted).  The ALJ assesses whether an individual's impairments prevent her from doing past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f).  "A job qualifies as past relevant work only if it involved substantial gainful activity." *Lewis*, 236 F.3d at 515 (citations omitted); 20 C.F.R. §§ 404.1560, 404.1565, 416.960, 416.965.  The ALJ compares the residual functional capacity assessment with the physical and mental demands of

1    an individual's past relevant work, and she will be found not disabled if she can

2    "still do this kind of work." 20 C.F.R. §§ 404.1520(f), 416.920(f).

3           Here, the ALJ made the following findings:

4           The claimant testified that she worked as a housekeeper from 2002
             until 2005 (Ex. 3E, pp. 1, 3; 13E). As a housekeeper, the claimant
5           cleaned hotel rooms and prepared the rooms for guests (Ex. 3E, p. 3).
             She reported that she earned $8.00 per hour and worked eight hours a
6           day five days per week (Ex. 3E, p. 3). In order to be considered past
             relevant work, an individual's previous jobs or occupations must meet
7           recency, duration, and substantial gainful activity requirements to be
             considered past relevant work. This job meets the recency requirement
8           as it occurred within the past 15 years. The vocational expert testified
             that the claimant's work as a housekeeper most closely correlated to
9           the occupation of Housekeeping Cleaner (323.687-014) under the
             Dictionary of Occupational Titles (DOT) and carried a specific
10          vocational preparation (SVP) of two. The claimant's work as a hotel
             clerk lasted over two years, indicating that she worked sufficient time
11          to meet the SVP for said occupation. Although there were no posted
             earnings since 2004, the undersigned finds that the cumulative
12          earnings and duration of the work do rise to the level of SGA and so
             finds that the claimant's work as a hotel clerk meets all three
13          requirements of past relevant work (Ex. 3D).

14    Tr. 24.  Plaintiff testified that she filled out the questionnaire that specified she was

15    a housekeeper at a hotel from 2003 to 2006.  Tr. 62; 194.  Despite Plaintiff's

16    present disavowal of the information in this form, the ALJ received this

17    information into evidence without objection from Plaintiff at the administrative

18    hearing.  Tr. 42.  Furthermore, other records show that Plaintiff worked at the Best

19    Western from May 2002 to 2005.  Tr. 251.  The Court recognizes that it is not

20    uncommon to have a failure of precise recollection, especially for specific dates.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

Finally, however, the Court observes that Plaintiff's reported income included $1,491.75 in 2002 from Mr. Tramp at Princess Properties; $2,984.25 in 2002 from Chelan-Douglas County Community Action Council; $8,546.90 in 2003 from Mr. Tramp; and $2,630.15 in 2004 from Mr. Tramp. Tr. 178-79 (The records do not reveal earnings for any particular month.) Plaintiff admitted that Mr. Tramp was her boss for her housekeeping work. Tr. 62. Accordingly, the Court rejects Plaintiff's argument. The record contains substantial evidence to support the ALJ's findings, including, most importantly, the Plaintiff's testimony and representations at the administrative level that she was working five days a week for eight hours a day at the rate of $8 an hour.

**B. Adverse Credibility Determination**

In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. §§ 416.908; 416.927. A claimant's statements about his or her symptoms alone will not suffice. 20 C.F.R. §§ 416.908; 416.927. Once an impairment has been proven to exist, the claimant need not offer further medical evidence to substantiate the alleged severity of his or her symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). As long as the impairment "could reasonably be expected to produce [the] symptoms," the claimant may offer a subjective evaluation as to the severity of the

impairment.  *Id.*  This rule recognizes that the severity of a claimant's symptoms

"cannot be objectively verified or measured."  *Id.* at 347 (quotation and citation

omitted).

If an ALJ finds the claimant's subjective assessment unreliable, "the ALJ

must make a credibility determination with findings sufficiently specific to permit

[a reviewing] court to conclude that the ALJ did not arbitrarily discredit claimant's

testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  In making

this determination, the ALJ may consider, *inter alia*: (1) the claimant's reputation

for truthfulness; (2) inconsistencies in the claimant's testimony or between his

testimony and his conduct; (3) the claimant's daily living activities; (4) the

claimant's work record; and (5) testimony from physicians or third parties

concerning the nature, severity, and effect of the claimant's condition.  *Id.; see also*

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (The ALJ may consider

many factors in weighing a claimant's credibility, including "(1) ordinary

techniques of credibility evaluation, such as the claimant's reputation for lying,

prior inconsistent statements concerning the symptoms, and other testimony by the

claimant that appears less than candid; (2) unexplained or inadequately explained

failure to seek treatment or to follow a prescribed course of treatment; and (3) the

claimant's daily activities.") (citation omitted).  If there is no evidence of

malingering, the ALJ's reasons for discrediting the claimant's testimony must be

1    "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir.

2    2012) (quotation and citation omitted).  The ALJ "must specifically identify the

3    testimony she or he finds not to be credible and must explain what evidence

4    undermines the testimony."  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir.

5    2001).

6         Plaintiff argues the ALJ erroneously found her not credible based upon the

7    gaps in her treatment (ECF No. 17 at 12-14), her activities of daily living (*id*. at 14-

8    16), inconsistencies in her testimony (*id*. at 17) and the lack of objective evidence

9    (*id*. at 17-18).

10        Here, the ALJ contrasted Plaintiff's complaints of total debilitating pain with

11   her treatment record.  The ALJ observed that in October 2007, Dr. Feinman noted

12   that after an iron infusion, Plaintiff was feeling better.  Tr. 21.  Then, there was a

13   minor gap in treatment until March 2008, when Plaintiff saw ARNP Bouton for

14   complaints of pain.  *Id*.  Yet, Plaintiff had a normal gait and full range of motion.

15   *Id*.  Plaintiff reported increased pain in August 2008, yet she had "no tenderness

16   with palpation of the spinal process of the cervical, thoracic, and lumbar spine" . . .

17   and "full flexion and extension of her low back without pain, full flexion of her

18   hips without pain bilaterally, and a negative straight leg raise test." *Id*.

19        The ALJ observed another gap in treatment until January 2009, when she

20   saw Dr. Derrick.  *Id*.  Dr. Derrick advised her to "discontinue smoking, which she

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

refused" and she "refused to try samples of medication to help her fibromyalgia pain for fear of a bad reaction in her stomach." *Id.*

Plaintiff's gaps in treatment, combined with her apparent unwillingness to follow treatment and the lack of objective findings are legitimate reasons to discount Plaintiff's claims of total disability. The ALJ's findings are supported by substantial evidence and constitute specific, clear and convincing reasons for discounting Plaintiff's testimony.

There are two grounds for using daily activities to form the basis for an adverse credibility determination. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). First, the daily activities may just contradict claimant's other testimony. *Id.; Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("whether the claimant engages in daily activities inconsistent with the alleged symptoms") (citation omitted). Second, daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of h[er] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. *Orn*, 495 F.3d at 639.

Here, the ALJ clearly used the first ground to discount Plaintiff's credibility, not the second as Plaintiff contends. The ALJ observed e.g., that despite Plaintiff's claim of total disability in October 2007, she reported to Dr. Feinman that she was walking four to five times a day about a mile each trip to walk her dog. Tr. 21.

The ALJ found that Plaintiff has mild limitations in her daily activities; she is able to take care of her household chores twice a week and prepare daily meals for herself; she is able to manage her own funds and goes shopping for food and personal products once a month for three hours; she walks her dog; she is able to take care of her home, use the computer daily, engage in basic food preparation, and manage her own finances; she plays video games on her computer for two hours every day in the morning, goes to the dog park, returns home to use her computer or crochet until lunch, goes back to the dog park, watches television, does chores, and plays on her computer again before bed; in 2008, she home schooled her minor son who has disabilities; and she takes care of her mother who has Alzheimer's. Tr. 18.

The ALJ also recounted the several medical examinations that continually showed unremarkable findings and full range of motion. Tr. 19-23. These are specific, clear and convincing reasons for discounting Plaintiff's testimony.

**C. The Validity of the ALJ's RFC Determination**

Plaintiff argues that ALJ's RFC determination was erroneously decided because the ALJ improperly weighed the medical opinions upon which it was based. ECF No. 17 at 18-23. Plaintiff also clarified, in reply, that the six

additional medical opinions submitted to the Appeals Council (Tr. 407-28) should be considered by the Court in reviewing this issue.[1]  ECF No. 24 at 2.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a the opinion of a treating physician carries more weight than the opinion of an examining physician, and the opinion of an examining physician carries more weight than the opinion of a reviewing physician.  *Id.*  In addition, the Commissioner's regulations give more weight to opinions that are explained than

---

[1] As a threshold matter, the Court finds that it may properly consider these opinions since the Appeals Council considered them in denying Plaintiff's request for review and incorporated them into the administrative record. Tr. 9; *see Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162–63 (9th Cir. 2012) ("[W]e hold that when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.").

1   to opinions that are not, and to the opinions of specialists on matters relating to

2   their area of expertise over the opinions of non-specialists. *Id.* (citations omitted).

3     If a treating or examining physician's opinion is uncontradicted, an ALJ may

4   reject it only by offering "clear and convincing reasons that are supported by

5   substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

6   "If a treating or examining doctor's opinion is contradicted by another doctor's

7   opinion, an ALJ may only reject it by providing specific and legitimate reasons

8   that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d

9   821, 830-831 (9th Cir. 1995)).  Regardless of the source, an ALJ need not accept a

10  physician's opinion that is "brief, conclusory and inadequately supported by

11  clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th

12  Cir. 2009) (quotation and citation omitted).

13    First, Plaintiff contends the ALJ improperly rejected Mr. Franzen's opinions.

14  ECF No. 17 at 20-22.  Mr. Franzen is a physical therapist and as such is considered

15  an "other source."  20 C.F.R. §§ 404.1513(d); 416.913(d).  Because Mr. Franzen is

16  an "other source" whose opinions about the nature and severity of Plaintiff's

17  impairments are not entitled to controlling weight, the ALJ need only have

18  provided "germane reasons" for rejecting his opinions. SSR 06–03p, 2006 WL

19  2329939 at *2; *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

Mr. Franzen opined that Plaintiff was capable of performing sedentary work on a part-time basis, and was mostly "limited by her poor physical fitness level and respiratory condition." Tr. 258.  He recommended a home exercise program, which "should help improve her tolerance for daily and work activities."  *Id*.; Tr. 427. The Court observes that Mr. Franzen's additional State DSHS form submitted to the Appeals Council is dated June 25, 2007, the same date as his original report and is not substantially different than what was reported there.  Tr. 426-428.

Here, the ALJ gave little weight to the opinion of Mr. Franzen because his opinion as to Plaintiff's functional limitations were not supported by "stable objective medical findings." Tr. 21, 257-58.  Mr. Franzen did not opine as to the length of Plaintiff's disability but did opine that she would improve.  Thus, the ALJ properly gave germane reasons for discounting Mr. Franzen's conclusion.

Plaintiff next contends the ALJ gave little weight to the opinion of Thomas Rowe, Ph.D.  ECF No. 17 at 20.  Plaintiff provides no other argument concerning Dr. Rowe, and as such the Court can decline to further address this issue. *See Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (declining to address plaintiffs argument "because [plaintiff] failed to argue this issue with any specificity in his briefing."). Nonetheless, the Court will briefly address Plaintiff's contention that has now only been raised in her reply brief.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

The ALJ provided the following specific and legitimate reasons for discounting Dr. Rowe's opinion that Plaintiff would never return to the workforce, because his opinion was contradicted by: "her self-reports of extremely dynamic activities of daily living including video games, puzzles, crocheting, preparing meals, and keeping up with her household chores;" his observation that Plaintiff "had good conversational attention and concentration with clear thought processes and no evidence of a thought disorder;" Dr. Rowe "did not review her medical records;" and her assigned GAF score was inconsistent with Plaintiff's activities of daily living. Tr. 22. These findings are supported by substantial evidence in the record, thus, no error has been shown.

Plaintiff contends the ALJ failed to provide specific and legitimate reasons to reject those findings of Dr. Derrick's which were inconsistent with the ALJ's RFC assessment. ECF No. 17 at 22-23. Plaintiff argues that the ALJ's mere summary of the evidence does not meet the requirement that she give specific and legitimate reasons to reject those findings inconsistent with her RFC. ECF No. 24 at 7. However, the Plaintiff identifies no specific RFC the ALJ rejected. Indeed, the ALJ gave significant weight to the opinions and observations of Dr. Derrick where they are . . . . based on objective findings. Tr. 22. Despite Plaintiff's argument to the contrary, "[o]ne way that an ALJ can give specific, legitimate reasons for rejecting controverted medical opinions is by summarizing the

conflicting evidence in detail and interpreting it." *See Magallanes v. Bowen*, 881

F.2d 747, 751 (9th Cir. 1989).  While the additional evidence submitted to the

Appeals Council only included Dr. Derrick's check box forms opining that

Plaintiff was limited to sedentary work, Tr. 409; 419,  it did not include any

additional objective evidence.  Thus, no error has been shown.

Lastly, Plaintiff contends the opinions of reviewing consultants, Drs.

Scottolini, Flanagan and Mee, are not substantial evidence upon which to base the

rejection of the additional limitations found by treating and examining sources,

including the opinion of Mr. Franzen and those opinions submitted to the Appeals

council for the first time. ECF No. 24 at 8.  Plaintiff cites *Lester v. Chater*, 81 F.3d

821 (9th Cir. 1995), for the proposition that the opinion of a reviewing physician,

Dr. Scottolini, cannot constitute substantial evidence that justifies rejection of the

opinion of a treating physician, Dr. Derrick.  ECF No. 17 at 23.  But *Lester*

recognized the rule applies if "nothing more" is used to substantiate the rejection of

a treating physician's opinion.  81 F.3d at 831.  In *Lester,* the Ninth Circuit

explained, "in rejecting the opinion of a treating physician, 'the ALJ did not rely

on [the nonexamining physician's] testimony *alone* to reject the opinions of

[claimant's] treating physicians....' Rather, as we pointed out, there was an

abundance of evidence that supported the ALJ's decision: the ALJ also relied on

laboratory test results, on contrary reports from examining physicians, and on

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 19

1    testimony from the claimant that conflicted with her treating physician's opinion."

2    *Lester*, 81 F.3d at 831 (emphasis in original, citations omitted).

3        Here, the ALJ properly discounted Mr. Franzen's opinion, discounted

4    Plaintiff's credibility and explained the significance of Dr. Derrick's underlying

5    records and findings.

6        While crediting Drs. Flanagan and Mee, the ALJ discussed ARNP Michael

7    Haley's records.  The ALJ found that there was very little evidence in the record

8    from only four sessions in 2010, that Mr. Haley did not state or even imply that the

9    claimant's functionality was reduced as a result of any mental impairment, and that

10   Plaintiff reported to Mr. Haley that she was going through menopause and thinks

11   that is what was causing most of her irritability and mood swings.  Tr. 23.   For

12   these reasons supported by substantial evidence in the record, it was not erroneous

13   for the ALJ to credit the reviewing doctors' opinions over Mr. Haley, an "other

14   source."   Once again, the conclusory opinions submitted to the Appeals Council

15   do not denigrate the objective findings contained in the record.  No error has been

16   shown here.

17       Defendant is entitled to summary judgment.

18   ///

19   ///

20   ///

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

1    **IT IS HEREBY ORDERED:**

2         1.  Plaintiff's Motion for Summary Judgment (ECF No. 17) is **DENIED**.

3         2.  Defendant's Motion for Summary Judgment (ECF No. 19) is

4              **GRANTED**.

5         The District Court Executive is hereby directed to file this Order, enter

6    Judgment for Defendant, provide copies to counsel, and **CLOSE** the file.

7         **DATED** August 12, 2014.

8    

9                            THOMAS O. RICE
                        United States District Judge

10

11

12

13

14

15

16

17

18

19

20